UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20295-CR-SEITZ

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.

**RAUL S. RAMIREZ,**

    Defendant.
_____/

### ORDER DENYING, WITHOUT PREJUDICE, SECOND AMENDED MOTION FOR REDUCTION AND/OR MODIFICATION OF BOND

    Presently pending before this Court is the Second Amended Motion for Reduction and/or Modification of Bond filed by Defendant Raul Ramirez (DE # 81). In this motion, Defendant Ramirez seeks to reduce the presently set bond from a $150,000.00 corporate surety bond and a $200,000.00 personal surety bond, to be co-signed by his wife and daughter and persons who establish that they have assets worth $200,000.00, to a $100,000.00 corporate surety bond and a $100,000.00 personal surety bond, to be co-signed by his wife and daughter and persons who establish they have assets worth $100,000.00. For the reasons stated below, as well as the reasons given at the prior bond hearing which reduced the initial bond to the amount presently set, the motion is denied, without prejudice.

    The undersigned Magistrate Judge has previously held a lengthy detention hearing (DE # 7, April 9, 2009), as well as two additional lengthy hearings on motions to modify the bond (DE # 39, July 7, 2009; DE # 45, August 20, 2009). During these hearings, this Court carefully considered the individual circumstances of this Defendant

and the charges pending against him in determining the bond required to reasonably assure his presence in court. None of these hearings have been transcribed. The numerous filings regarding bond have also been considered (DE ## 16, 17, 26, 36, 41, 42, 56, 63, 69, 81, and 82).

At the Defendant's initial appearance in Court on these charges, the Government requested that the Defendant be held in pretrial detention based upon his risk of flight. Following the detention hearing, and based upon the pretrial services report, and the proffer of defense counsel, the undersigned Magistrate Judge denied the Government's request for detention because, although there was a serious risk of flight, the undersigned determined that, based upon what appeared to be extensive ties to this community, and the ability of the Defendant to post a high corporate surety bond, there were conditions which could be set to reasonably assure his appearance at trial. Thus, the Court set a $300,000.00 corporate surety bond, with a Nebbia condition, and a $100,000.00 personal surety bond, co-signed by the Defendant's wife and daughter, together with certain non-financial conditions.

Thereafter, the Defendant sought a reduction in the amount of his bond. After considering the circumstances, the Court modified the financial conditions of the bond to a $150,000.00 corporate surety bond, with a Nebbia condition, and a $200,000.00 personal surety bond to be co-signed by the Defendant's wife and daughter, and other persons who, collectively, own property worth $200,000.00 (and who provide affidavits which establish the sufficient value of such assets, pursuant to 18 U.S.C. § 3142(c)(1)(B)(xii)). In addition, the Court set the following non-financial conditions of release: (1) Execute all appropriate documentation to ensure that any property or funds which are presently the subject of litigation in state court against the heirs of Dr. Barata

will be held in escrow by the Defendant's attorney, and not released to him absent further Order of the Court, or until the bond is discharged; (2) Surrender all travel documents; (3) Report to the pretrial services division of the U. S. Probation Office as directed by them; (4) Submit to random drug testing, based upon his history of drug use; (5) None of the signatories to the bond are permitted to encumber any property they own without prior permission of the Court; (6) No contact with the witnesses to, or the victims of, the charges crimes, except through counsel; (7) No possession of firearms; (8) Home confinement with electronic monitoring, to be paid for by the Defendant based upon his ability to pay; except for medical visits, attorney visits, and court-ordered obligations, with prior notice to and approval by the pretrial services officer.

At the Nebbia hearing, the Defendant called two witnesses who had agreed to pledge property to secure the bond–Ursula Torres and Marisa Garcia. Although the Defendant argued that the value of the properties owned by these two individuals was sufficient to satisfy the $150,000.00 corporate surety bond, the value appeared questionable to the undersigned. In particular, the property which Ms. Ursula Torres intended to pledge was encumbered by a mortgage of $135,000.00, and according to the proffer of defense counsel had a value of between $150,00.00 and $175,000.00; yielding equity in the amount of $15,000 to $40,000.00.[1] The Government proffered the value, according to Chase.com, of $162,000.00, yielding equity in the amount of $27,000.00. Ms.

---

[1] In a subsequent Nebbia proffer (DE # 63), Defendant Ramirez proffered that this property was worth $190,000.00 (DE # 56), which appears to be an inexplicable rise in value during a falling market. The prior Nebbia proffer also includes three cars, which are estimated to be worth a total of between $19,427.00 and $26,625.00. Assuming the best case scenario, the total value of this property is $81,625.00, far short of even the $100,000.00 corporate surety bond requested in the present motion. The present motion, however, does not specify exactly what property Defendant Ramirez intends to use to satisfy the Nebbia condition.

Marisa Garcia, who owns three properties, offered to pledge one of those properties to secure the bond. The motion erroneously referred to her primary residence as the property which was being pledged. This was corrected at the hearing to reflect that it was a rental property, located at 1830 SW 127th Ave., Miami, Florida, which was being offered. The existing mortgage on that property was $262,000.00, and defense counsel proffered a fair market value of between $350,000.00 and $375,000.00. However, this was based on Ms. Garcia's estimate, which in turn, was based upon her understanding of the sales price for other homes in the neighborhood. According to the Government's proffer, based upon Chase.com, the fair market value of the house was only $203,000.00, thus yielding no equity. The Nebbia condition was therefore not satisfied, and the parties were directed to confer regarding satisfaction of the Nebbia condition attached to the corporate surety bond. In addition, there was no attempt to satisfy the requirements of 18 U.S.C. § 3142(c)(B)(xii) regarding the $200,000.00 personal surety bond; and, there was no documentation filed regarding the proceeds of the ongoing state court litigation.

Thereafter, the Defendant filed a motion for a hearing to permit the Nebbia requirement to be satisfied, coupled with a Nebbia Proffer (DE # 56). Based upon the insufficiency of the proffer, the Court ordered supplemental documentation to be filed (DE # 57). A supplement was filed (DE # 63), but it did not comply with the Court's order, and therefore the request to find the Nebbia condition satisfied was denied without prejudice (DE # 80).

The record in this case, including the proffer of the Government at the bond hearings, the pretrial services report, and the proffer of Defendant establishes the

following facts.[2]  Defendant Raul Ramirez is charged in a 13-count Indictment with health care fraud offenses.  According to the proffer of the Government, which is summarized in its Response in opposition to the prior Motion for Reduction of Bond (DE # 26), from approximately February 2004 through April 2005, Defendant Ramirez caused his medical clinic, R.A. Medical Center to bill Medicare for over $24 million for purported HIV related treatments.  As a result of these billings, Medicare paid approximately $7,000,000.00.  The scheme involved the payment of kickbacks to patients in order to bill for treatments that were not medically necessary and not provided.  In addition, blood samples were altered to justify the billings.  The evidence upon which the Government relies, although challenged by the Defendant, appears strong to the undersigned Magistrate Judge.  In a prior civil forfeiture proceeding, the Defendant agreed to the forfeiture of $5,000,000.00 which he had received as a result of the above billings.  The Government does not have evidence that the Defendant maintained a "cash hoard" with respect to the remainder of the funds billed, although at the detention hearing the Government proffered that it had not been able to trace approximately $1.4 million in cash.

The Government has estimated that, based upon the amount of the alleged fraud, and the Defendant's role as an organizer and leader of a scheme involving five or more participants, the advisory sentencing guideline range is between 135 to 188 months (DE # 26 at 4).

The physician who ordered the treatments which were the subject of the billings, Dr. Barata, resided in New York, and made periodic trips to Miami, Florida.  Dr. Barata

---

[2]  This is not intended to be a complete recitation of the relevant facts and background of the Defendant, but only highlights some of the circumstances which led the undersigned Magistrate Judge to set the bond imposed in this case.

has since died, and there is litigation pending in the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, which was brought by his estate to recover certain property which it alleges Defendant Ramirez fraudulently obtained from Dr. Barata. The value of the property involved in that case is substantial and apparently involves more than two million dollars.[3]

The Defendant has a criminal record which involves prior convictions for a weapons violation in the District of Columbia in 1986; assault in the District of Columbia in 1983; and possession of cocaine in Miami-Dade County in 1986, for which adjudication of guilt was withheld. In addition, the record provided by the Government in its opposition to the present motion reflects that he pled guilty to a misdemeanor bond violation in the District of Columbia (DE # 86). The undersigned recognizes that the Defendant was acquitted in 2006 of the unauthorized practice of medicine at the clinic which forms the basis for the charges in the case at bar.

The Defendant is 54 years old, and was born in Cuba. He entered the United States in 1980, and is a permanent resident. There is an outstanding warrant of removal based upon his drug conviction; however, counsel proffered that the State Court Judge

---

[3] The Defendant has alleged in his most recent motion that there is approximately one million dollars at stake in this lawsuit (DE # 81 at 8). According to the proffer of the attorney handling the civil litigation on behalf of Defendant Ramirez, there are two condominiums and an office building which are the subject of the state court litigation. The heirs allege that Defendant Ramirez forged Dr. Barata's name on certain documents which transferred these properties to Defendant Ramirez. It appears that the litigation involves properties which are listed in the Pretrial Services Officer's report as a residence (later corrected to be an office) worth $1,500,000; a residence (later clarified to be a Miami Beach condominium) worth $400,000.00; and a residence worth $700,000.00.

Defendant Ramirez is also involved in a dispute involving a car accident in which he was injured and is seeking to recover damages, although the present status of that matter is not known. According to the Defendant's motion, he hopes to net approximately $50,000.00 as a result of this litigation (DE # 81 at 8).

before whom the Defendant pled guilty has indicated that he would vacate the conviction if it caused the Defendant to be subject to deportation as a result of that conviction. He has resided in Miami-Dade County, with his spouse, since 1986. He has two children, who are ages 21 and 14. At the time of his arrest, the Defendant worked as a coach and manager at the AAA Baseball Academy, which he owns. The Defendant's mother and three half-siblings reside in Cuba. The Defendant reported to pretrial services that he had not traveled outside the United States during the past five years.

This Court has carefully reviewed the evidence proffered by the Government and the motions filed by the Defendant, as well as the arguments, evidence and proffers made at three lengthy hearings, and has determined that the amount and type of bond previously set by this Court is necessary to reasonably assure the appearance of the Defendant as required. This is particularly true where the Defendant has failed to set forth the properties and personal guarantees of the individuals who are willing to assist with the bond. It is possible that some further reduction would be appropriate depending upon the availability of other persons to satisfy the personal surety obligations of the bond. The Defendant, however, has failed to address this issue in any of his motions or memoranda. In addition, the documentation regarding the state court lawsuits has not been provided.

It is well settled in this Circuit that the court can insist on a financial condition of release, even if the defendant is unable to meet this condition, if the court finds that it is reasonably necessary to insure the defendant's presence. *United States v. Wong-Alvarez*, 779 F.2d 583 (11th Cir. 1985); *appeal after remand, United States v. Wong-Alvarez*, 784 F.2d 1530 (11th Cir. 1986). Other circuits have reached the same conclusion. *United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991); *United States v. McConnell*,

842 F.2d 105 (5th Cir. 1988); *United States v. LeClercq,* 2007 WL 4365601 at *2 (S.D. FL. 12/13/2007) (citing additional cases).  After conducting a full review of the record in this case, this Court remains convinced that the least restrictive means necessary for this purpose have been imposed on the Defendant.  The evidence against the Defendant is substantial and the Defendant is facing a significant period of incarceration if convicted on the charges in the case at bar.  The estimated guideline range, if all enhancements sought by the Government are imposed,[4] may be tantamount to a life sentence for this Defendant.  He is not a citizen of the United States, and there is an outstanding order of removal based upon a prior conviction.  Even if that conviction is vacated, he will be subject to removal if convicted on these charges.  He has significant ties to Cuba since his mother and three half-siblings reside there.  He was self-employed at the time of his arrest in a business which, according to his report to pretrial services, has no value except for his services as a coach and manager.  Therefore, the undersigned concludes that the only conditions of release that will reasonably assure the presence of the Defendant involve a significant corporate surety bond, combined with a significant personal surety bond co-signed by family members and/or members of the community with sufficient assets.

     At the present time, it is unnecessary to have an additional hearing.  If the Defendant is able to proffer sufficient facts to establish that he will be able to satisfy the requested modification of the bond, a hearing may be appropriate at that time.  However, the Second Amended Motion does not establish the existence of the required co-signers

---

[4] In addition to the enhancements detailed above, the Government has also stated that additional enhancements may apply which would increase the estimated guideline range to between 292 and 365 months (DE # 86 at 4-5).

on the requested reduction of the personal surety aspect of the bond to $100,000.00, and does not identify property worth $100,000.00 to satisfy the requested reduction of the corporate surety bond. A mere statement that the bondsman is satisfied is not sufficient.

Therefore, based on a careful review of the record, it is hereby

**ORDERED AND ADJUDGED** that Defendant Raul Ramirez' Second Amended Motion for Reduction and/or Modification of Bond (DE # 81) and Request for Oral Argument (DE # 82) are **DENIED**, without prejudice to renew, if accompanied by the appropriate proffer of properties and personal guarantees to assure his appearance, as well as documentation regarding the pending state litigation.

**DONE AND ORDERED** in chambers in Miami, Florida on December 29, 2009.

*[signature: Andrea M. Simonton]*

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
   The Honorable Patricia A. Seitz, United States District Judge
   All counsel of record