UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.09-20295-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAUL S. RAMIREZ,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendant, RAUL S. RAMIREZ, Motion to Suppress Physical Evidence (DE#83, 12/18/09). This case was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Patricia Seitz, United States District Court Judge for the Southern District of Florida. Having held an evidentiary hearing and carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully recommends that the Defendant's Motion to Suppress be **DENIED**.

## BACKGROUND

The defendant, RAUL S. RAMIREZ, is charged in a sixteen-count indictment with conspiracy to commit health care fraud and money laundering in violation of Title 18, United States Code, Sections 1349, 1347, and 1957. (DE# 3, 4/2/09).

## **FINDINGS OF FACT**

After obtaining an arrest warrant on April 2, 2009, FBI health care fraud Agent Lapp prepared a plan to execute the warrant. Because of the defendant's violent criminal history and a large gate surrounding his home, Agent Lapp elicited assistance from the FBI SWAT team.

On April, 9, 2009 at approximately 5:45 a.m., FBI health care fraud agents and an FBI SWAT team arrived at the defendant's home to execute the arrest warrant. SWAT agents knocked and announced and the defendant, his wife, Odalys ("Mrs. Ramirez"), and their daughter, Nathalie, answered the door. SWAT agents handcuffed and detained them outside of the home. SWAT agents also removed the defendant's son, Raul, from the home and detained him outside. At approximately 5:55 a.m., SWAT agents turned custody of the defendant over to FBI health care fraud agents. The defendant did not tell members of the SWAT team that they could not search his home.[1] FBI Agent Lapp identified herself to the defendant, who immediately informed Agent Lapp that he had an attorney. Agent Lapp briefly spoke to the defendant to make sure that he had shoes, did not need to take any medication, and was ready for transport. They did not discuss consent to search the defendant's home. At approximately 6:06 a.m., two FBI agents transported the defendant to the FBI office and the SWAT team left the scene. The defendant did not discuss consent to search his home with the transporting agents.

---

[1] Agent Lapp interviewed the SWAT team leader and the agents that conducted the arrest and guarded the defendant, all of which stated that the defendant did not discuss the search of his residence with them or indicate that he would not consent to a search of his residence.

After the defendant was transported away, Agent Lapp and three other health care fraud agents remained on the scene. Agent Lapp explained the situation to the defendant's family. The agents uncuffed the family and escorted them back into their home. Agent Lapp accompanied the family to their living room and asked Mrs. Ramirez if they could look around. Upon hearing Mrs. Ramirez verbally consent, one agent began to search the kitchen. Agent Lapp then read a consent to search form to Mrs. Ramirez. Mrs. Ramirez signed the form, and two other agents began to search the home. After a few minutes, the agents showed Mrs. Ramirez nineteen documents recovered from the search that they wanted to take. Mrs. Ramirez briefly looked at the documents to make sure that none were bills and signed a receipt form. The agents left the home around 6:25 a.m.

The defendant, Mrs. Ramirez, and their daughter, Nathalie, testified at the evidentiary hearing that the SWAT team arrived at their residence significantly earlier than 5:45 a.m. They also testified that they were handcuffed and detained outside of their home for thirty to sixty minutes while SWAT agents searched their residence. They contend that during this time the defendant repeatedly told the SWAT agents that they did not have permission to search his home. Mrs. Ramirez and Nathalie also testified that Agent Lapp did not ask for Mrs. Ramirez' consent to search the home. Both stated that Mrs. Ramirez did not sign a consent form and never consented to the

search of their home.[2]

## ANALYSIS

The defendant asserts that he told FBI SWAT and health care fraud agents that he did not consent to a warrantless search of his home. The defendant also contends that even if he did not refuse consent, the agents removed him from the scene for the purpose of avoiding an objection to search. Furthermore, the defendant asserts that Mrs. Ramirez did not orally consent to the search or sign a consent form, and that the form was forged by FBI agents. The defendant argues that the nineteen documents seized from his home should be suppressed because they were the fruit of an illegal search. The government argues that the defendant never refused consent and that Mrs. Ramirez provided both oral and written consent to search the home. The government also contends that the defendant was not removed from the scene for the purpose of avoiding objection to search.

## VOLUNTARINESS

The search of the home was valid as Mrs. Ramirez had authority and voluntarily

---

[2] The undersigned does not find this testimony credible. See United States v. Boulette, 265 Fed. Appx. 895, 898 (11th Cir. 2008) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder is in a better position than a reviewing court to assess the credibility of witnesses.'"). The undersigned notes that the defendant is facing a substantial term of imprisonment and has an interest in testifying favorably. The undersigned credits the testimony of Agent Lapp, Agent Cox, and Agent Purify that the defendant never discussed or refused consent to search his home. The undersigned had the opportunity to observe the demeanor of all witnesses and notes that there were several inconsistencies with their testimony. For instance, Mrs. Ramirez and Nathalie Ramirez testified that Mrs. Ramirez did not sign a consent form. However, the signature on the consent form is substantially similar to Mrs. Ramirez' handwriting.

consented to the search of the residence.  The question of whether a consent was in fact voluntary or a product of duress or coercion, express or implied, is to be determined by the totality of the circumstances and is a matter for which the government has the burden of proof.  United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Schenckloth v. Bustamante, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972).   While a warrantless search is generally lawful when conducted pursuant to a subject's voluntary consent, the government must prove that consent was given voluntarily, as an independent act of free will and not mere acquiescence to police authority.  Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).  See also Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).  To be considered voluntary, a consent to search must be the product of an essentially free and unconstrained choice.  United States v. Garcia, 890 F.2d 355, 360 (11th Cir., 1989).

In the case at hand, the totality of the circumstances demonstrate that Mrs. Ramirez voluntarily consented to the search.  Special Agent Lapp and Special Agent Cox's testimony that Mrs. Ramirez verbally consented to the search and signed a consent form indicating that the entire residence could be searched was credible.  Furthermore, the signature on the consent form is sufficiently similar to Mrs. Ramirez' signature.  There is no evidence that the agents used any coercive tactics to induce consent.  Mrs. Ramirez voluntarily permitted the agents to search the residence.

**AUTHORITY**

A search conducted without a warrant is valid if an authorized person consents. Schenckloth v. Bustamante, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1972).

Anyone who possesses common authority over or other sufficient relationship to a premises may consent to the search of another's property. Lenz v. Winburn, 51 F.3d 1540, 1548 (11th Cir. 1995). A third party with common authority over a house may consent to a search obviating the need for a search warrant. United States v. Matlock, 415 U.S. 164, 171 (1974). The defendant does not contest Mrs. Ramirez' authority to allow agents to search their residence. Rather, the defendant contends that he expressly refused consent, invalidating any consent Mrs. Ramirez may have given.

"A physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Georgia v. Randolph, 547 U.S. 103, 122-123, 126 S.Ct. 1515 (2006). However, police are not required to take affirmative steps to consult with every potentially-objecting inhabitant. Id. at 122-123. A potential objector, present or nearby, that does not take part in the threshold consent colloquy "loses out." Id. at 122. The government presented credible evidence to refute the defendant's assertion that he refused consent. Agent Lapp spoke with the SWAT team leader and agents that conducted the arrest and guarded the defendant; no SWAT agents heard the defendant make a statement refusing consent. Agents Lapp and Cox testified that they never heard the defendant refuse consent. Agent Lapp also testified that because the defendant immediately told her that he was represented by counsel, it was her understanding that she could not speak with him. In this case, the government was not required to ask the defendant for consent to search his home and there is no credible evidence that he ever indicated refusal.

The defendant also contends that FBI agents purposely removed him from the scene in order to prevent him from objecting to the search of his house. A co-tenant's

6

otherwise valid consent is nullified when a potential objector is intentionally removed for the purpose of avoiding refusal to search.  Georgia v. Randolph, 547 U.S. at 121.  However, executing a search warrant and taking a defendant into custody does not constitute removal for the purposes of the exception discussed in Georgia v. Randolph.  See United States v. Brown, 563 F.3d 410, 417 (9th Cir., 2009) (explaining that the defendant was not purposely removed for the sake of the Randolph exception when he was validly arrested and detained in the back of a police car).  Furthermore, there is no evidence that FBI agents removed the defendant for any purpose other than to execute a safe and valid arrest.  See United States v. Travis, 311 Fed. Appx. 305, 310 (11th Cir., 2009) ("For Randolph's possible exception to apply, there must be some evidence of police intent to avoid objection as well as removal of the potentially objecting party from the entrance.").  Although Agent Lapp indicated that she intended to seek consent to search, her testimony and the FBI's operational plan do not indicate an intent to circumvent the defendant's potential refusal.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Defendant, RAUL S. RAMIREZ' Motion to Suppress Physical Evidence (DE#83, 12/18/09) be DENIED.  Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Patricia Seitz, United States District Judge, within ten (10) days of receipt of a copy of this Report and

Recommendation.  See Nettles v. Wainwright, 677 F. 2d 404 (5th Cir. 1982).

      RESPECTFULLY SUBMITTED, in Chambers, at Miami, Florida this **4th** day of February, 2010.

                                                  JOHN J. O'SULLIVAN  
                                                  UNITED STATES MAGISTRATE JUDGE

Copies provided to:  
United States District Judge Seitz  
All counsel of record